O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| STACY OLLEY,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security<br><br>        Defendant. | Case No. EDCV 08-00018-MLG<br><br>MEMORANDUM OPINION AND ORDER |

## I.  Procedural and Factual History

Plaintiff Stacy Olley ("Plaintiff") seeks judicial review of the Commissioner's final decision denying her application for Supplemental Security Income benefits ("SSI").  Plaintiff applied for SSI benefits on June 18, 2004 (Joint Stipulation ("Joint Stip.") at 2.)  Plaintiff alleges disability beginning January 8, 2002 due to diabetes, gastroesophageal reflux disease with diarrhea, and status post hysterectomy. (Joint Stip. at 2).

Plaintiff was born on January 15, 1965 and was 41 years old at the time of the administrative hearing. (Administrative Record ("AR")

at 17). She completed high school and one year of college. She has no relevant work experience because she was a full-time homemaker. (AR at 247). Plaintiff's application was denied at the initial stage of the administrative process on September 16, 2004, and upon reconsideration on July 1, 2005. (AR at 12). A de novo hearing was held on October 11, 2006, before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr. (AR at 203-230). Plaintiff, unrepresented by counsel, testified at the hearing. (AR at 245-257, 259-260). Sandra Fioretti testified as a vocational expert. (AR at 257-259).

On November 6, 2006, the ALJ issued an unfavorable decision, denying SSI benefits. (AR at 12-19). The ALJ determined that Plaintiff suffers from the severe impairments of diabetes, gastroesophageal reflux disease with diarrhea, and status post hysterectomy. (AR at 14). The ALJ found that there was insufficient evidence to show that Plaintiff's claim of depression was "severe" within the meaning of the Social Security regulations. (AR at 14); *see* 20 C.F.R. § 416.924(c). The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR at 15); *see* 20 C.F.R. 416.920(d), 416.025 and 416.926). The ALJ determined that the Plaintiff has the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with the following limitations: The claimant can occasional lift and/or carry 20 pounds and 10 pounds frequently; within an eight-hour workday, she can sit, stand, and/or walk for six hours;

       occasionally use her right-hand for handling and fingering. However, the claimant is restricted from using a forceful grip or bilateral grasp. Additionally, while driving, the claimant must be able to alternate her hands after 15 minutes. (AR at 15).

Based on the testimony of the vocational expert, the ALJ found that there was work available to Plaintiff in the national and local economy in significant numbers. (AR at 18). Therefore, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any time from June 18, 2004 through the date of the decision. (AR at 18). Plaintiff appealed this determination to the Appeals Council. On December 8, 2007, the Appeals Council denied Plaintiff's request for review. (AR at 4-6).

    Plaintiff timely commenced this action for judicial review. Plaintiff alleges that the ALJ erred as follows: (1) by failing to establish that Plaintiff could perform the jobs of Order Caller, Cashier II, and Ticket Taker; (2) by failing to pose a complete hypothetical to the vocational expert; (3) by failing to fully develop the record; and (4) by failing to properly consider the type, dosage, effectiveness, and side effects of Plaintiff's medication. (Joint Stip. at 2-3.) Plaintiff asks this Court to order an award of benefits, or, in the alternative, to remand for a new administrative hearing. (Joint Stip. at 19.)

## II. **Standard of Review**

    Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal

error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III.     Discussion and Analysis**

    **A.     The ALJ Properly Determined that Plaintiff Could Perform a Class of Jobs Consistent with Her Physical Limitations**

Plaintiff asserts that the ALJ erred in determining that Plaintiff could perform the jobs of Order Caller, Cashier II and Ticket Taker. (Joint Stip. at 3-4). In assessing Plaintiff's RFC, the ALJ found that Plaintiff was limited to no more than occasional use of her right hand for handling and fingering, in addition to a variety of other exertional and non-exertional restrictions. (AR at 15). Based on this RFC and the testimony of the vocational expert, the ALJ concluded that Plaintiff was capable of performing the jobs of Order Caller, Cashier II and Ticket Taker as they are generally performed in

4

the national and local economy. (AR at 18).

Plaintiff alleges that she was precluded from performing these jobs because the Dictionary of Occupational Titles ("DOT") establishes that the jobs of Order Caller and Cashier II both require frequent fingering and handling, and the job of Ticket Taker requires frequent handling. (Joint Stip. at 3-4); *see* DOT 209.667-014 (Order Caller), DOT 211.462-010 (Cashier II), DOT 344.667-010 (Ticket Taker). Plaintiff claims that the ALJ's determination that Plaintiff could perform these three jobs is inconsistent with the RFC, in which Plaintiff may only occasionally use her right hand for handling and fingering. (Joint Stip. at 3). The Commissioner argues that the ALJ properly relied on the testimony of the vocational expert in determining that Plaintiff has the ability to perform these jobs. (Joint Stip. at 4-8).

Here, the ALJ properly relied on the testimony of the vocational expert. (AR at 18, 258-259). "An ALJ may take administrative notice of any reliable job information, including information provided by a vocational expert." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony...[and]...no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ may properly take into account the testimony of a vocational expert that a claimant, given his or her relevant limitations, can perform specific jobs existing in significant numbers in the economy. *Id.* at 1217-1218. In his hypothetical to the vocational expert, the ALJ included all of the physical limitations

5

identified by Plaintiff and supported by the medical evidence.[1]  Based upon this information, the vocational expert found Plaintiff could perform the jobs of Order Caller, Cashier II or Ticket Taker, each of which captured Plaintiff's specific abilities and limitations.  The ALJ's reliance on testimony the vocational expert gave in response to the ALJ's hypothetical was therefore proper. *Id.* at 1217.

Furthermore, the vocational expert provided testimony that all three jobs existed in sufficient numbers in the national and local economies.[2]  The vocational expert even eroded the number of Cashier II jobs available by 50% to account for Plaintiff's limitations, an action adopted by the ALJ's decision. (AR at 18.) The vocational expert testified that Plaintiff would not have to do more than *occasional* handling and fingering with the right hand with a 50% erosion rate for Cashier II jobs. (AR at 258). Thus, the vocational expert specifically took into account Plaintiff's limitation in only being able to do "occasional handling and fingering with the right hand" by stating that, while this limitation "would certainly eliminate a number of cashier jobs...there would be some left." (AR at 259). Therefore, under these circumstances, the ALJ did not err in adopting the vocational expert's testimony.

---

[1] When the ALJ asked Plaintiff if he had left out any other limitations from the hypothetical question, Plaintiff answered in the negative. (AR at 258).

[2] The vocational expert testified as follows: "There would be work as an order caller.  Order caller is light, unskilled, SVP 2.  Regionally, there are 1,000 positions; nationally, there are 15,000 positions.  There would be work as a cashier 2, also light, unskilled, SVP 2.  I would erode the number of those jobs by 50 percent which would leave 2,500 regionally and in excess of 50,000 nationally. [¶] There would be work as a ticket taker which is light, unskilled, SVP 2.  Regionally, there are 500 positions; nationally, there are 8,300 positions." (AR at 258-259).

Additionally, the Court agrees with the Commissioner that Plaintiff is qualified to do each of the jobs identified by the vocational expert - Order Taker, Cashier II and Ticket Taker. None of these jobs require that both hands be capable of frequent fingering and handling, or that the fingering and handling be performed by the dominant hand. (DOT Nos. 209.667-014, 211.462-010, and 344.667-010). Therefore, even though Plaintiff is right-handed, because she has no fingering or handling limitations as to her left hand, she is able to perform each of these jobs.

Based on Plaintiff's RFC and the testimony of the vocational expert, the ALJ properly concluded that Plaintiff was capable of performing work that exists in significant numbers in the national and local economies. Therefore, no relief is warranted on this issue.

**B.   The ALJ Posed a Proper Hypothetical Question to the Vocational Expert**

Plaintiff contends that the ALJ improperly posed a hypothetical question to the vocational expert that did not include the restriction on Plaintiff's using a forceful grip or a bilateral grasp, as provided in the RFC. (Joint Stip. at 8). The hypothetical question posed by the ALJ to the vocational expert is as follows:

> [T]he situation we have is a 41-year-old individual who has a high school education, and whose lifting capacity is limited to 20 pounds occasionally and on a more frequent basis would have to be under ten pounds; sitting, standing, and walking is also somewhat limited and she needs to be able to – or she can't do any one position the entire day. She can't do more than six hours out of eight hours for any one of those individual activities, not all at once. She'd have to have

7

```
          normal breaks after two hours – or every two hours, but the
          total after – over an eight-hour workday would total at eight
          hours.  *With regard to her right hand, she can only do
          handling and fingering occasionally, and she is right-handed;
          and can't do any forceful gripping or grasping with either
          hand.*  If she's doing an activity like driving, after ten or
          15 minutes would have to alternate hands  – use of the
          hands....With those limitations, can you identify any
          unskilled work that could be performed?
```
(AR at 257-258) (emphasis added).

    The Court finds that the ALJ posed a complete hypothetical question to the vocational expert, which properly took into account the Plaintiff's limitations in using her hands. In the hypothetical question, the ALJ specifically instructed the vocational expert to consider that Plaintiff "can't do any forceful gripping or grasping with either hand," which is substantially equivalent to a "forceful grip or bilateral grasp." The point of a hypothetical question is to "clearly present to the [vocational expert] a set of limitations that mirror those of the claimant." *Roe v. Chater*, 92 F.3d 672, 676 (9th Cir. 1996). "While the hypothetical question must set forth all of the claimant's impairments, it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments." *Id.* Here, while the hypothetical question posed by the ALJ did not use the exact terminology of a "forceful grip or bilateral grasp," nevertheless it "clearly present[ed]" to the vocational expert Plaintiff's limitations on the use of her hands.

    Further, none of the three identified jobs, Order Caller, Cashier II, or Ticket Taker, requires forceful gripping or grasping. (DOT Nos.

209.667-014, 211.462-010, 344.667-010). Therefore, even if the ALJ had not included a limitation on Plaintiff's ability to grip and grasp, the vocational expert would still have determined that Plaintiff is capable of performing these jobs. Accordingly, relief is not warranted on this issue.

### C. The ALJ Properly Developed the Record

Plaintiff claims that the ALJ failed to properly develop the administrative record regarding Plaintiff's claim of depression (Joint Stp. at 10-11). During the administrative hearing, Plaintiff testified that she was on medication for depression. (AR at 252). In response to a question posed by the ALJ as to whether Plaintiff was seeing anyone for her depression, Plaintiff stated that her "regular doctor gives [her] the medication." (AR at 259). When asked by the ALJ whether the medication helped, Plaintiff testified that her doctor had doubled the medication, but "it still doesn't work." (AR at 259). Plaintiff did not name the medication or further elaborate on her claim that she suffered from depression. Plaintiff contends that, based solely on her testimony, the ALJ had a duty to further develop the record regarding her alleged depression.

The ALJ has a "special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). However, the ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.*

A claimant for disability benefits bears the burden of producing evidence to demonstrate that he or she was disabled within the

relevant time period. *Johnson*, 60 F.3d at 1432. The existence of a severe impairment is demonstrated when the evidence establishes more than a minimal effect on an individual's ability to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a).[3] Furthermore, the "existence of emotional disorder...is not *per se* disabling...there must be proof of the impairment's disabling severity." *Sample v. Schweiker*, 694 F.2d 639, 642-643 (9th Cir. 1982) (internal citations omitted). To prove that a disability is severe, the plaintiff "must present 'complete and detailed objective medical reports of her condition from licensed medical professionals.'" *Johnson*, 60 F.3d at 1432 (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

Here, the ALJ had no duty to further develop the record because the record before the ALJ in this case was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Aside from her brief testimony at the administrative hearing, Plaintiff did not produce any evidence to show that her alleged depression was severe. Plaintiff did not provide any medical evidence to show that she ever complained to a physician that she suffered from severe depression or that such depression limited or restricted her in any way. (AR 247-257, 259-260). Plaintiff also failed to produce any record of a physician's diagnosis of depression. (AR at 107-242). Similarly, in her testimony at the administrative hearing, Plaintiff never mentioned

---

[3] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs", which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b).

10

any limitations or restrictions as a result of her alleged depression. (AR at 247-257, 259-260).

Further, the medical records provided to the ALJ include only one reference to Plaintiff actual being prescribed an antidepressant medication. On April 15, 2004, Plaintiff's physician, Dr. Mark Lauron, prescribed Effexor, although there is no record that the prescription was ever refilled. (AR at 114). Plaintiff did submit one additional medical record to the Appeals Council, dated August 7, 2006, in which Dr. Neera Grover, a specialist in gastroenterology, diagnosed Plaintiff with anxiety and "reactive depression," based on Plaintiff's complaint of a "significant increase in stress due to personal problems with her daughter." (AR at 238). Dr. Grover stated that a "trial of Xanax or antidepressant may be considered." (Id.). However, there is no medical record showing that Dr. Grover ever prescribed Xanax or any other antidepressant medication to Plaintiff.

For the reasons noted above, the ALJ correctly determined that, as to Plaintiff's claimed depression, "there [was] insufficient evidence to show that it causes a limitation and/or restriction having more than a minimal effect on her ability to do basic work activities." (AR at 14). Therefore, the Court finds that the ALJ properly developed the record and reached a conclusion that was supported by substantial evidence.

**D.   The ALJ Properly Considered the Type, Dosage, Effectiveness and Side Effects of Plaintiff's Medication**

Plaintiff contends that the ALJ failed to properly consider the side effects of her medication in reaching the disability determination. (Joint Stip. at 15-17). In a disability report dated July 22, 2004, Plaintiff claimed that Soma caused dizziness (AR at

70). In a disability report appeal dated April 19, 2005, Plaintiff claimed that Nexium made her feel "sick." (AR at 91). In a disability report appeal dated July 7, 2005, Plaintiff claimed additional side effects from medication: aspirin gave Plaintiff stomach aches; Methocarbanol and Carisoprodol made Plaintiff "sleepy" and "dizzy;" and Oxybutynin gave Plaintiff "cotton mouth." (AR at 102). Plaintiff also noted that she was taking Effexor for depression, but stated that it did not produce any side effects. (AR at 91).

"The ALJ must consider *all* factors that might have a 'significant impact on an individual's ability to work.'" *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993) (quoting *Varney v. Secretary of Health & Human Services*, 846 F.2d 581, 585 (9th Cir. 1987), *relief modified*, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." *Erickson*, 9 F.3d at 818; *Varney*, 846 F.3d at 585 ("[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized.") (citation omitted). However, Plaintiff bears the burden of producing medical evidence to show that any claimed side effects from medication are severe enough to interfere with her ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that "passing mentions of the side effects of...medication in some of the medical records" was insufficient evidence).

As support for her claim, Plaintiff cites the *Complete Guide to Prescription & Nonprescription Drugs*, 2007 Edition, for a myriad of possible side effects of each of the above-referenced medications. (Joint Stip. at 16). The Court notes that the Social Security regulations do not require an ALJ to consider a claimant's medications

as part of every disability determination. The mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any one of the myriad possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working for *these* reasons.

This specific information must be presented to the ALJ as part of the claimant's burden to demonstrate disability. If Plaintiff's medications prevent her from working, she has to say so. Only at that point does the type, dosage, effectiveness, and side effects of medication become relevant, so the ALJ can evaluate Plaintiff's credibility. As the regulations make clear, the ALJ must consider these factors only "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects," because "the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. 1996). Absent an individual's statements of impairment at the outset, the ALJ has no duty to inquire as to the claimant's medications.

The Court concludes that Plaintiff has failed to demonstrate that side effects from her medications precluded her from engaging in any substantial gainful activity. During her testimony at the administrative hearing, Plaintiff never mentioned any side effects from her medications or claimed that she was unable to work due to side effects. (AR at 247-257, 259-260). Nor was there any evidence in the record indicating that the side effects of Plaintiff's medications

13

would have impaired her ability to work. *See Osenbrock*, 240 F.3d at 1164.  Plaintiff therefore failed to fairly present the issue to the ALJ, who did not err by reaching his disability determination without analyzing the type, dosage, effectiveness, and side effects of Plaintiff's medication.

**V.   Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

Dated: October 9, 2008

_____
Marc L. Goldman
United States Magistrate Judge